UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GRESHAM,

        Plaintiff,        Case No. 1:10-cv-1146

v.        Honorable Janet T. Neff

JOHN PAYNE et al.,

        Defendants.

_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff currently is incarcerated in the Ionia Maximum Correctional Facility, but the events giving rise to his complaint also occurred at the Marquette Branch Prison (MBP). Plaintiff named the following Defendants in his original complaint (docket #1): Resident Unit Manager John Payne; Assistant Resident Unit Supervisor Jimmy Waters; Assistant Deputy Wardens Erica Huss and Nanette Norwood; Warden Willie Smith; Grievance Coordinators M. Breedlove, Richard Russell and Jim Armstrong; Grievance Specialist Jodi Washington; Litigation Coordinator Aaron Vroman; Inspector Betty Goodson; Michigan Department of Corrections Director Patricia Caruso; Hearings Administrators Matthew Young and Richard Stapelton; Linda Wittman; and unnamed Jane and John Does. The Court ordered Plaintiff to file an amended complaint on the form as required by W.D. MICH. L.Civ.R 5.6(a). In his amended complaint (docket #8), Plaintiff wrote in the caption on the cover page "Governors of Michigan Granholm and Snyder; same defendants as original complaint including but not limited to named on amendment HO Marutiak et al." However, in the "parties" section of the complaint, Plaintiff listed only some of the Defendants named in the original complaint and the following new Defendants: ARUS (unknown) Kelly, Hearing Officer (unknown) Marutiak, Hearings Investigator Parrish Smith, and unknown Jane and John Doe mail room staff members.

Plaintiff's amended complaint concerns a major misconduct conviction. On November 23, 2010, Nurse Betty Kemp wrote a misconduct report against Plaintiff for sexual misconduct - exposure. According to the Major Misconduct Report written by Defendant Marutiak, the investigation of the misconduct charge consisted of the misconduct report, Plaintiff's statements to the hearings investigator, a witness statement from (unknown) Resident Unit Officer Michelin,

a report from Psychologist Dozeman finding that Plaintiff was responsible for his behavior at or near the time of the alleged incident, a prisoner witness statement and two video segments.[1] (Major Misconduct Hearing Report, Page ID#161.) The misconduct hearing began on December 6, 2010, but was adjourned in order to confirm whether Defendant Kelly had reviewed the misconduct with Plaintiff within twenty-four hours as required by department policy. According to the time on the video, the review was conducted eight minutes after the twenty-four-hour period had expired. When the hearing was reconvened on December 9, 2010, the hearing officer had a statement from the prison confirming that the video clock has a ten-minute delay, so the review was conducted within the twenty-four-hour period.

After reviewing the evidence, Defendant Marutiak found Plaintiff guilty of the offense. Marutiak provided the following reasons for his findings:

> HO finds the stronger impression is that prisoner Gresham intentionally exposed his sexual organs to RN Kemp on 11/23/10 at approximately 0635hrs., as evidenced by the specific and descriptive staff report from the RN and by the corroborative evidence that she was at the prisoner's segregation cell door at the time.
>
> More specifically, as the RN was making an early morning healthcare round and when she was outside of the charged prisoner's cell, cell 22-1, prisoner Gresham placed his erect penis in the cell window, grasped the penis and moved his hand in an up and down fashion, thereby masturbating and thereby exposing his sexual organs to the RN when he knew she was present. The placement of the prisoner's penis in the window area was deliberate and designed only to harass the RN. The charged prisoner's claim that "it was not me" is rejected by the HO in light of the identification made by RN Kemp by the prisoner's door card and photo ID. The due process claims made by the prisoner have already been addressed and found to be without merit or unpersuasive.

(Major Misconduct Hearing Report, Page ID#161.)

---

[1] Neither Betty Kemp nor (unknown) Resident Unit Officer Michelin was listed as a Defendant in Plaintiff's original or amended complaint. However, because Plaintiff refers to them as Defendants in the body of the complaint and makes allegations against them, they have been included as Defendants for purposes of this opinion and judgment.

Plaintiff contends that misconduct charge was false and that Kemp wrote it in retaliation for Plaintiff's grievances against health care and his litigation activity. He further claims that Defendants Marutiak, Smith, Kelly, Kemp and Michelin engaged in a retaliatory conspiracy to convict him of the false charge. Plaintiff also claims that his due process rights were violated in the misconduct proceedings when Defendants Marutiak and Smith refused to consider grievances that Plaintiff had filed against Defendant Kemp. Plaintiff further claims that Smith failed to interview prisoners that allegedly were disrupted by Plaintiff's alleged misconduct. Plaintiff also claims that Defendant Smith failed to assist him in obtaining evidence that Plaintiff was stabbed on September 13, 2010, and, thus, was incapable of committing the acts alleged by Kemp. In addition, Plaintiff claims that his due process rights were violated when Defendant Marutiak adjourned the hearing without his consent and found that the misconduct review was conducted in a timely manner when Plaintiff did not have notice that the prison video system was delayed by ten minutes. Plaintiff also claims that the conviction cannot stand because the box was not checked on the misconduct hearing report indicating that he was guilty.

Plaintiff seeks injunctive relief, including the expungement of his misconduct conviction. He also seeks monetary damages of $700 million.

**Discussion**

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

I.      **Failure to make allegations**

While Plaintiff named the following Defendants in his original complaint, he failed to make any factual allegations against them whatsoever in his amended complaint: Payne, Waters, Huss, Smith, Norwood, Breedlove, Vroman, Goodson, Caruso, Young, Stapelton, Russell, Washington, Wittman and Armstrong.  Plaintiff also fails to make factual allegations against Defendants Granholm and Snyder, who are named in the amended complaint.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").  Because Plaintiff fails to mention these Defendants in the body of his amended complaint, his allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").  Accordingly, Defendants Payne, Waters, Huss, Smith, Norwood, Breedlove, Vroman, Goodson, Caruso, Young, Stapelton, Russell, Washington,

Wittman, Armstrong, Granholm and Snyder will be dismissed for failure to state a claim.

II.     **Misconduct Proceedings**

Plaintiff claims that his due process rights were violated in the misconduct proceedings. The starting point for any discussion of the procedural due process rights of a prisoner subject to a disciplinary proceeding is *Wolff v. McDonnell*, 418 U.S. 539 (1974). In *Wolff*, the Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69. The right to call witnesses or present evidence, however, is not absolute. *Id.* at 566.

Plaintiff does not dispute that he received notice of the charges or that he received a copy of the major misconduct report. Thus, the first and third requirements are not at issue. With regard to the second requirement, Plaintiff claims that his due process rights were violated in the proceedings when Defendants Marutiak and Smith refused to consider grievances that Plaintiff had filed against Defendant Kemp. Plaintiff further claims that Smith failed to interview prisoners that allegedly were disrupted by Plaintiff's alleged misconduct. Plaintiff also claims that Defendant Smith failed to assist him in obtaining evidence that Plaintiff was stabbed on September 13, 2010, and, thus, was incapable of committing the acts alleged by Kemp.

Contrary to Plaintiffs assertions, "[p]risoners do not have an absolute, unfettered right to present evidence at misconduct hearings." *Falkiewicz v. Grayson*, 271 F. Supp. 2d 942, 950 (E.D. Mich. 2003). Plaintiff did not need copies of his grievances against Kemp in order to assert that the

misconduct charge was written in retaliation for filing grievances. The precise nature of Plaintiff's grievances against Kemp was not relevant to his defense. Plaintiff also does not allege how interviews with prisoners who allegedly were disrupted by Plaintiff's misconduct would have assisted in his defense. Defendant Marutiak clearly stated in the hearing report that the issue of Plaintiff's disruptiveness to other prisoners was not relevant to the charges against him. Moreover, evidence that Plaintiff was stabbed on September 13, 2010 could not have proven that Plaintiff was incapable of committing the sexual misconduct alleged by Kemp on November 23, 2010, more than two months after the alleged stabbing.

With regard to the burden of proof, "[N]ot much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985)). The Supreme Court held that the requirements of due process are satisfied if "some evidence" supports the prison disciplinary board's decision to revoke good-time credits. *Hill*, 472 U.S. at 455. In determining whether a decision of a prison disciplinary board is supported by "some evidence", a federal court is "not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence." *Williams*, 63 F.3d at 486 (quoting *Hill*, 472 U.S. at 455). "'Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Williams*, 63 F.3d at 486 (citing *Hill*, 472 U.S. at 455-56). Moreover, the Constitution does not require that the evidence logically preclude any conclusion but the one reached by the hearings officer in the disciplinary proceeding. *Hill*, 472 U.S. at 456; *see also Falkiewicz*, 271 F. Supp. 2d at 948. "[A] hearings officer in a prison disciplinary proceeding is not required to find the prisoner guilty beyond a reasonable doubt, or find that guilty

was the only reasonable interpretation of the evidence." *Thomas v. Marberry*, No. 06-cv-13282, 2007 WL 1041250, at *2 (E.D. Mich. Apr. 5, 2007) (*citing Mullins v. Smith*, 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998)).

Defendant Marutiak's decision was largely based on the credibility of the parties and witnesses. As discussed in *Hill, supra*, this Court will not make an independent assessment of the credibility of witnesses as the hearing officer was in the best position to judge their credibility. In this case, the hearing officer found Nurse Kemp's allegations of sexual misconduct to be credible. Nurse Kemp's statement presented more than sufficient evidence to support the misconduct conviction.

Plaintiff also claims that his due process rights were violated when Defendant Marutiak adjourned the hearing without his consent and found that the misconduct review was conducted in a timely manner when Plaintiff did not have notice that the prison video system was delayed by ten minutes. Plaintiff further contends that the conviction cannot stand because the box was not checked on the misconduct hearing report indicating that he was guilty. Plaintiff, however, does not allege how he was prejudiced by the adjournment. Had Marutiak determined that the misconduct review was not held within the time provided by MDOC policy, the charge would have been dismissed. Furthermore, the failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-2347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed

to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Thus, even if the misconduct review was conducted eight minutes late in violation of department policy, the minor delay would not have constituted a violation of Plaintiff's due process rights. Plaintiff, therefore, fails to state a due process claim against Defendants Marutiak, Smith, Kelly, Kemp or Michelin arising from the misconduct proceedings.

        III.    **Retaliation**

Plaintiff alleges that Kemp wrote the major misconduct against him retaliation for his complaints against health care and his litigation activity. He further claims that Defendants Marutiak, Smith, Kelly, Kemp and Michelin engaged in a retaliatory conspiracy to convict him of the false charge. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (*citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Even if Plaintiff could satisfy the first two requirements for a retaliation claim, his wholly conclusory allegations of retaliatory intent are insufficient to support the third element. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by

direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (*quoting Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); see also *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts whatsoever to support his conclusion that Defendant Kemp brought the misconduct against him in retaliation for his grievances against her or health care. Plaintiff's claim of a retaliatory conspiracy on behalf of Defendants Marutiak, Smith, Kelly, Kemp and Michelin is even more attenuated. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to

state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff's allegations of conspiracy are conclusory and speculative. Therefore, he fails to state a claim for retaliation or conspiracy against Defendants Kemp, Marutiak, Smith, Kelly and Michelin.

V. **Access to the Courts**

Plaintiff also asserts a violation of his right of access to the courts. Specifically, he alleges that he is not being provided with ink pens and writing paper to fully and adequately address these claims in subsequent pleadings. (Am. Compl., Page ID#158.)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Van Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue

a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff fails to allege that he suffered actual injury to his ability to litigate the claims set forth in this action. Plaintiff's original complaint consisted of 135 pages and he has since filed an amended complaint and over ten motions. In the absence of actual injury, Plaintiff fails to state a claim for denial of access to the courts.

VI. **Motions**

Plaintiff has filed numerous motions in this case, including a motion to appoint counsel (docket #2), motion for preliminary injunction (docket #3), motion to serve the complaint (docket #4), motion to compel MDOC to produce video footage (docket #10), motion to relate cases (docket #11), motion to appoint expert (docket #13), motion to compel discovery, for default judgment, for writ of mandamus, etc. (docket #15), motion to relate, amend exhibits, etc. (docket #16), motions for copies of pleadings (docket #19), motion/affidavit regarding original defendants (docket #20), motion to appoint counsel, etc. (docket #21). Because the Court finds that Plaintiff's amended complaint fails to state a claim upon which relief may be granted, his motions will be denied as moot.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997) (overruled on other grounds by *Jones v. Bock*, 549 U.S. 199, 206, 210-11 (2007)). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment and Order consistent with this Opinion will be entered.


Dated:  March 8, 2011                         /s/ Janet T. Neff
                                                               Janet T. Neff
                                                               United States District Judge